# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES KOZLOWSKI, an individual; and PERRY KOZLOWSKI, an individual, | ) ) ) ) | Civ. 12-4174-KES |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | ORDER GRANTING PLAINTIFFS' MOTION TO AMEND COMPLAINT |
| GREGORY J. PALMQUIST, an individual; NORTH AMERICAN NATIONAL MARKETING, LLC, a Colorado limited liability company; NANM, LLC, a Colorado limited liability company; GARDINER LIMITED PARTNERSHIP ACQUISITIONS, LLC, a Colorado limited liability company; AVANZAR FINANCIAL GROUP, LLC, a Colorado limited liability company; and JOHN DOE DEFENDANTS 1-5, being any other related person or entity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER VENUE |
| Defendants. | ) | |

Plaintiffs, James Kozlowski and Perry Kozlowski, brought claims against defendants alleging causes of action for accounting, breach of contract, fraud and deceit, and tortious interference with a business/contractual relationship. Defendants, Gregory Palmquist, North American National Marketing, LLC, NANM, LLC, Gardiner Limited Partnership Acquisitions, LLC, and Avanzar Financial Group, LLC, move to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and/or

failure to state a claim. In the alternative, defendants move the court to transfer this case to the United States District Court for the District of Colorado. Plaintiffs resist the motion and also move to amend the complaint. For the following reasons, the complaint will be amended and defendants' motion is granted in part and denied in part.

## BACKGROUND

The pertinent facts, according to the amended complaint (Docket 21-1), are as follows:

Plaintiff James Kozlowski is a resident of South Dakota, and plaintiff Perry Kozlowski is a resident of North Dakota. Defendant Gregory Palmquist is a resident of Colorado, and the four defendant companies are Colorado limited liability companies.

Defendants are in the business of brokering and selling life settlement policies. Fox Financial, a nonparty company, is in the business of purchasing life settlement policies. Plaintiffs are in the business of introducing prospective purchasers of life settlement policies to prospective sellers.

A business relationship existed between plaintiffs and Fox Financial in which plaintiffs would locate life settlement policies for Fox Financial to purchase, and in turn, plaintiffs would be compensated for each successful transaction. This relationship included non-circumvent and non-compete agreements between the parties to ensure plaintiffs profited from successful transactions.

At a time unknown to the court, plaintiffs introduced Fox Financial to defendants for the purpose of facilitating the selling and purchasing of life settlement policies. Following this introduction, Fox Financial set up a South Dakota limited liability company, Morningstar Settlements, LLC, which was the entity that would purchase the policies sold by defendants. Plaintiffs were to be compensated on each transaction between Fox Financial/Morningstar and defendants. The parties agreed that defendants would be responsible for paying plaintiffs two fees: (1) a share of the typical broker's fee, and (2) 20 percent of the "product fees."[1]

Several transactions took place in 2008 and 2009. Upon successful completion of these transactions, defendant Avanzar paid plaintiffs the broker's fees, and defendant Gardiner paid the 20 percent of the product fees.

On January 27, 2011, plaintiffs learned that defendants had secretly sold life settlement policies to Fox Financial/Morningstar in July of 2010 and that another deal was pending. Plaintiffs were not compensated for these transactions because, according to defendants, the business model had changed and defendants were now dealing directly with Fox Financial/Morningstar. These secret deals impaired plaintiffs' business relations with Fox Financial and precluded further business dealings between plaintiffs and Fox Financial.

---

[1] The product fees appear to be fees associated with defendants' re-engineering of life insurance policies.

3

## AMENDING COMPLAINT

Plaintiffs move to amend the complaint by adding allegations regarding the amount of damages they are seeking. The proposed language alleges that the amount in controversy with respect to plaintiffs' claims is in excess of $75,000. The purpose of the proposed amendment is to establish subject matter jurisdiction through diversity jurisdiction.

Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading with the court's leave, and the "court should freely give leave when justice so requires." The court may withhold its permission to amend if plaintiffs are "guilty of undue delay, bad faith, dilatory motive, or if permission to amend would unduly prejudice the opposing party." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994). Here, there is no evidence of bad faith or dilatory motives nor is plaintiffs' request an undue delay because a scheduling order has not been entered in this litigation. Further, defendants would not be unduly prejudiced because the amendment does not advance a particular claim; it merely provides clarity on the amount of damages plaintiffs are seeking. It seems plaintiffs' failure to allege the amount in controversy was inadvertent. Docket 23 at 1. Therefore, the court finds that justice requires leave to be given, and the complaint is amended as shown in the attachment to Docket 21.

Because the amended complaint includes an allegation that the amount in controversy here exceeds $75,000, defendants' argument that diversity

jurisdiction does not exist because there is no mention in the complaint about the amount in controversy no longer holds weight.

**PERSONAL JURISDICTION**

## I.     Legal Standard

An action can be dismissed, following a motion by defendants, for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (internal quotations omitted). If personal jurisdiction is contested, "the plaintiff has the burden of proving facts supporting personal jurisdiction." *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008). The plaintiff "need[] only make a prima facie showing of jurisdiction." *Id.* In determining whether personal jurisdiction exists, the court may rely on the pleadings as well as the "affidavits and exhibits presented with the motions and opposition thereto." *Id.* The court also must "view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011).

## II.    Discussion

"A federal court may exercise jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due

Process Clause of the Constitution." *Miller*, 528 F.3d at 1090. The South
Dakota long-arm statute confers jurisdiction to the fullest extent permissible
under due process, and thus, the court's inquiry is whether exercise of
personal jurisdiction over these defendants comports with due process. *Bell
Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 921 (8th Cir. 1995).

Due process requires "minimum contacts" to exist between the defendant
and the forum state before the court can exercise jurisdiction over the
defendant. *Miller*, 528 F.3d at 1090. "Contacts with the forum state must be
sufficient that requiring a party to defend an action would not offend
traditional notions of fair play and substantial justice." *Myers v. Casino Queen,
Inc.*, 689 F.3d 904, 911 (8th Cir. 2012). The connection "between the defendant
and the forum State necessary for a finding of minimum contacts must come
about by an action of the defendant purposefully directed toward the forum
State." *Id.*

The Eighth Circuit Court of Appeals has instructed this court to apply a
five-factor test to evaluate whether a defendant's actions are sufficient to
support personal jurisdiction: (1) the nature and quality of the contacts with
the forum state; (2) the quantity of those contacts; (3) the relationship of those
contacts with the cause of action; (4) the forum state's interest in providing a
forum for its residents; and (5) the convenience or inconvenience to the parties.
*Id.* Although the first three factors are given the most weight, the court must
"look at all of the factors in the aggregate and examine the totality of the

circumstances in making a personal-jurisdiction determination." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010).

The third factor distinguishes between specific and general jurisdiction. *Myers*, 689 F.3d at 911. "Specific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant." *Id.* at 912. General jurisdiction, on the other hand, exists when a defendant has continuous and systematic contacts with the forum state, even if the contacts do not specifically relate to the cause of action. *Dever*, 380 F.3d at 1073. A plaintiff can establish personal jurisdiction by showing the existence of either general or specific jurisdiction. *Id.*

Here, plaintiffs focus almost exclusively on arguing specific jurisdiction exists. Plaintiffs' sole argument with respect to general jurisdiction is that "there is evidence that an agent of one of the Defendants' affiliates is licensed in South Dakota to conduct insurance activities. If so, the Court might have general jurisdiction over these Defendants." Docket 23 at 8. But plaintiffs do not explain what the evidence is or even identify which defendant allegedly has an agent in South Dakota. This is not enough to make a prima facie showing that general jurisdiction exists with any one defendant, let alone all five. Thus, the court will focus its analysis on the issue of whether specific personal jurisdiction exists with respect to each defendant.[2]

_____

[2] Plaintiffs bear the burden of establishing personal jurisdiction with respect to *each* defendant. *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."). Therefore, general statements referring to the "defendants" in the aggregate are not particularly useful in establishing personal jurisdiction for each defendant

## A.      Gregory Palmquist

Defendant Palmquist is a resident of Colorado. In May 2008, Palmquist made a trip to South Dakota and met with plaintiffs to further their business relationship and to promote life insurance opportunities. Docket 26 at 1. During this trip, Palmquist attended business meetings with executives at four different companies and at four different locations in South Dakota. Also during this trip, Palmquist encouraged plaintiffs to seek out buyers and sellers for insurance policies and proposed compensating them for successfully doing so. After an agreement apparently was reached among the parties, including Palmquist, the payments made to plaintiffs in accordance with said agreement were made to a South Dakota bank.

The court analyzes these facts under the five-factor test noted above to determine whether plaintiffs made a prima facie showing that the court has specific personal jurisdiction over Palmquist. Palmquist traveled to South Dakota and targeted South Dakota residents when promoting certain life insurance opportunities. Negotiations for an agreement between Palmquist and plaintiffs, in which Palmquist would compensate plaintiffs for finding buyers and sellers of insurance policies, also took place in South Dakota. Plaintiffs' breach of contract action may very well arise out of these activities, and at the very least the cause of action seems related to these activities. *See Myers*, 689 F.3d at 913 (finding that when a cause of action "relates to" defendant's activities directed at the forum state, exercising specific jurisdiction does not

individually.

offend traditional notions of fair play and substantial justice). Therefore, the first and third factors—the nature/quality of the contacts and the relationship of those contacts with the forum state—weigh in favor of exercising personal jurisdiction.

The second factor—the quantity of contacts—is not of much help in determining whether personal jurisdiction exists. While Palmquist's activities did not reach a large number of people, the business of selling life insurance policies does not lend itself to a large market. As the plaintiffs note in their brief, the quantity of contacts here is not insignificant. *See Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965) (noting that when a small market exists for a product, minimal contacts may support exercising jurisdiction).

The fourth factor—South Dakota's interest in providing a forum—weighs in favor of exercising jurisdiction because James Kozlowski is a South Dakota resident who was allegedly injured by Palmquist's actions. *See K-V Pharm. Co.*, 648 F.3d at 595 ("[The forum state] obviously has an interest in providing a forum for [its] resident."). The fifth factor—the convenience to the parties—does not weigh in either plaintiffs' or Palmquist's favor. Because the parties are citizens of different states, there will be some inconvenience regardless of where the litigation takes place. Palmquist will be inconvenienced if the litigation takes place in South Dakota, and plaintiffs will be inconvenienced if the litigation takes place in Colorado, as defendants propose.

After analyzing the facts put forth by plaintiffs under the Eighth Circuit's five-factor test, the court finds that these facts, taken as true, are enough for plaintiffs to make their prima facie showing that the court has specific personal jurisdiction over Palmquist.

**B.     Other Four Defendants**

NA National Marketing, NANM, and Gardiner are Colorado limited liability companies, and Palmquist is their registered agent. Avanzar is a Colorado limited liability company, and Daniel Davies is its registered agent. Plaintiffs claim that Palmquist is connected to all four defendant companies and, in fact, is partially in control of them. Plaintiffs also claim that the four defendant companies "may function as [Palmquist's] alter ego." Docket 26 at 2.

The rest of plaintiffs' allegations aimed at establishing personal jurisdiction are all too generalized to be of any assistance in determining whether specific personal jurisdiction exists with respect to each individual defendant company. In asserting the various actions that form the basis for personal jurisdiction, plaintiffs continuously use the word "defendants" in the aggregate. For example, plaintiffs state that "Defendants sent numerous emails and placed numerous phone calls to James Kozlowski in South Dakota" and "Defendants sent various payments via wire transfer from a bank in Colorado to James Kozlowski's bank in South Dakota." Docket 26 at 2. Without knowing the actions of each specific defendant, the court cannot make the necessary individualized assessment.

It may be the case, as plaintiffs seem to imply, that Palmquist was acting on behalf of all four defendant companies when he visited South Dakota. If Palmquist was acting on behalf of all four defendant companies, then there may be enough minimum contacts to exercise jurisdiction over the companies consistent with the court's determination regarding Palmquist in his individual capacity.[3] But there is not sufficient evidence before the court at this point to make such a determination. Therefore, the court will allow plaintiffs jurisdictional discovery to establish whether each defendant company has contacts with South Dakota as to warrant personal jurisdiction over them. Defendants' motion to dismiss is denied at this time without prejudice. *See Steinbuch v. Cutler*, 518 F.3d 580, 588-89 (8th Cir. 2008) (allowing jurisdictional discovery when the evidence on the record did not allow for a conclusive determination on the issue of personal jurisdiction); 5B Charles Alan Wright et al., *Federal Practice and Procedure* § 1351 (3d ed. 2012) ("When a federal court is considering a challenge to its jurisdiction over a defendant or over some form of property, the district judge has considerable procedural leeway in choosing a methodology for deciding the motion."). Following jurisdictional discovery, the corporate defendants may again move for dismissal for lack of personal jurisdiction if they believe the court does not have personal jurisdiction over them.

---

[3] The parties did not brief the issue of whether Palmquist's actions were enough to justify exercising personal jurisdiction over the four defendant companies, and thus, the court will not make such a determination at this point during the litigation.

## VENUE

Defendants argue plaintiffs' complaint should be dismissed because venue in the District of South Dakota is improper. A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Section 1391(b)(2) "does not posit a single appropriate district for venue; venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). Because the court has already found that plaintiffs' causes of action relate to, and may even arise out of, defendant Palmquist's contacts with South Dakota, the court finds that the District of South Dakota is an appropriate venue. Indeed, plaintiffs allege that Palmquist negotiated agreements within South Dakota and also performed in accordance with an agreement by sending money to a bank in South Dakota. Based on the evidence in the record, the court cannot say that South Dakota is an improper venue.

Moreover, defendants have not made a sufficient showing that a transfer to a Colorado federal court would serve the interests of justice as required under 28 U.S.C. § 1404(a). Thus, defendants' motion to dismiss, or in the alternative to transfer venue, is denied.

## FAILURE TO STATE A CLAIM

Defendants also argue plaintiffs' complaint fails to state a claim for which relief can be granted and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## I. Legal Standard

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). To decide the motion to dismiss, the court may consider the complaint, some materials that are part of the public record, and materials embraced by the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual content in the complaint must "allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## II.    Discussion

### A.    Accounting

Defendants argue that a cause of action for an accounting is not recognized under South Dakota law.[4] Defendants cite to *American Prairie Construction, Co. v. Tri-State Financial, LLC*, 369 F. Supp. 2d 1112, 1115 (D.S.D. 2005), to support their argument. But *American Prairie* does not support defendants' proposition. *Id.* Instead, United States District Judge Kornmann found that an accounting cause of action was not sustainable under the facts in that case. *See id.* at 1115 ("[Plaintiff] would be entitled to an "accounting" only if the funds were still held by the law firm when this action was commenced. With the refunds having been made, there is no asset to be subjected to an accounting."). Thus, *American Prairie* does not support defendants' theory.

After reviewing the relevant case law, it is obvious that a cause of action for an accounting exists under South Dakota law. For example, in *Bill v. Hyde* the Supreme Court of South Dakota stated that it was "satisfied that the complaint states a cause of action for an accounting." 205 N.W. 708, 709 (S.D. 1925). *See also Aaron v. Sec. Inv. Co.*, 211 N.W. 965, 967 (S.D. 1927) ("With the receiver as plaintiff, the action is for a general round-up and collection of the assets of the insolvent corporation and constitutes but one cause of action in equity in the nature of a creditor's bill for an accounting[.]"); *Hale v. Hale*, 14

---

[4] The parties appear to agree South Dakota law applies in this diversity action.

N.W. 644, 651 (S.D. 1901) (recognizing the existence of an action for an accounting). Thus, defendants' argument that South Dakota law does not recognize an accounting cause of action lacks merit.

**B.    Breach of Contract**

To establish breach of contract under South Dakota law, plaintiffs must show: (1) an enforceable promise, (2) breach of the promise, and (3) resulting damages. *Weitzel v. Sioux Valley Heart Partners*, 714 N.W.2d 884, 894 (S.D. 2006). Defendants specifically argue the amended complaint does not sufficiently allege a claim for breach of contract because there is no alleged breach.

The amended complaint alleges there were "agreements between all the parties" in which defendants agreed to compensate plaintiffs "on each new deal that was consummated between Fox Financial/Morningstar and Defendants." Docket 21-1 at ¶¶ 17-20. The amended complaint asserts that "compensation was to paid by the Defendants." *Id.* at ¶ 19. It goes on to allege that "Defendants secretly sold life settlement policies to Fox Financial/ Morningstar, [and] Defendants had not compensated Plaintiffs." *Id.* at ¶¶ 22-23. Based on these statements, the court finds plaintiffs sufficiently stated a claim for breach of contract. The breach allegedly occurred when defendants secretly sold life settlement policies to Fox Financial/Morningstar without compensating plaintiffs for the same in accordance with their agreement to do so.

Defendants take issue with plaintiffs' use of "defendants" in the aggregate, suggesting plaintiffs should be required to use the name of the

specific defendant in each allegation. The court is unaware of such a requirement under the current notice pleading system under Federal Rule of Civil Procedure 8(a), and defendants do not cite to any caselaw that imposes such a burden. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations[.]") (internal quotations omitted). By using "defendants" in the aggregate, the inference, which is required to be drawn in plaintiffs' favor, is that all of the defendants entered into an agreement or agreements to compensate the plaintiffs for the transactions between defendants and Fox Financial/ Morningstar, and when plaintiffs were not compensated following a transaction, all of the defendants allegedly breached their respective agreements. Therefore, plaintiffs' amended complaint sufficiently sets forth a breach of contract action against all of the defendants.

## C. Fraud and Deceit

Defendants argue plaintiffs failed to meet the heightened pleading requirements to assert their claim for fraud and deceit. Federal Rule of Civil Procedure 9(b) requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013)

16

(citing *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)). This requirement of a higher degree of notice than that required by Rule 8 is to "enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

Under South Dakota law, "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL 20-10-1. Deceit is the "suppression of a fact by one who is bound to disclose it[.]" SDCL 20-10-2(3). The essential elements of fraud are: (1) that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it; (2) that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and (3) that the other party did in fact rely on it and was induced thereby to act to his injury or damage. *N. Am. Truck & Trailer, Inc. v. M.C.I. Commc'n Serv., Inc.*, 751 N.W.2d 710, 713 (S.D. 2008).

In their attempt to show they satisfied Rule 9(b)'s particularity requirements, plaintiffs direct the court to three allegations in the amended complaint:

> 22. On January 27, 2011, Plaintiffs learned that Defendants had secretly sold life settlement policies to Fox Financial/ Morningstar in July of 2010, and that another deal was pending.
>
> . . . .
>
> 34. . . . Defendants committed statutory deceit by Defendants' willful acts of suppressing facts known to them which they

were bound to disclose to Plaintiffs, including the existence of transactions in 2010 and 2011 for which Plaintiffs were entitled to compensation.

35. The suppression of those facts was intended to hide Defendants' duty to pay Plaintiffs' compensation, and thereby avoid payment altogether.

Docket 21-1 at ¶¶ 22, 34, 35. Viewing these allegations together, as well as the amended complaint as a whole, the court finds that plaintiffs failed to plead the identity of the person(s) charged with the deceit. There are five named defendants here—four business entities and an individual. It is not clear from plaintiffs' amended complaint which defendant: (1) suppressed the fact that there existed transactions in 2010 and 2011 for which plaintiffs were entitled to compensation and (2) was also bound to disclose such fact. Instead, defendants are left to guess who was responsible for the alleged fraud and deceit and are thus hindered in their ability to respond specifically and quickly to the potentially damaging allegations. Therefore, the court finds that plaintiffs failed to state with particularity the circumstances constituting the alleged fraud and deceit. *See Trooien v. Mansour*, 608 F.3d 1020, 1030 (8th Cir. 2010) ("It is not sufficient to attribute alleged false statements to "defendants" generally.") (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997) (finding pleading insufficient under Rule 9(b) where defendants were "left to guess" who was "responsible for the alleged fraud")).[5]

---

[5] Defendants also argue that if plaintiffs' fraud claim fails, then so does their request for punitive damages. This court has previously held that punitive damages are a form of relief and not a "claim" subject to a Rule 12(b)(6) motion to dismiss. *Benedetto v. Delta Air Lines, Inc.*, 917 F. Supp. 2d 976, 984 (D.S.D.

**D.**      **Tortious Interference with Business/Contractual Relationship**

Defendants also argue the complaint falls short of pleading a sufficient

tortious interference claim. The elements for this cause of action are: (1) the

existence of a valid business relationship; (2) knowledge by the interferer of the

relationship; (3) an intentional and unjustified act of interference; (4) proof that

the interference caused harm; and (5) damage to the party whose relationship

was disrupted. *Setliff v. Akins*, 616 N.W.2d 878, 889 (S.D. 2000). "One is liable

for commission of this tort if he interferes with business relations of another,

*both existing and prospective*, by inducing a third person not to enter into or

continue a business relation with another or by preventing a third person from

continuing a business relation with another." *Id.* at 889 (internal quotations

omitted).

After reviewing the amended complaint, the court finds plaintiffs stated a

claim for tortious interference. Plaintiffs allege they had a business relationship

with Fox Financial in which plaintiffs would locate life settlement policies for

Fox Financial to purchase. Docket 21-1 at ¶ 10. Further, plaintiffs and Fox

Financial had entered into non-circumvent and non-compete agreements so

that plaintiffs were guaranteed to profit when Fox Financial was introduced to

new business leads. *Id.* at ¶ 11. Plaintiffs also allege defendants, knowing of

this relationship, unjustifiably interfered with it by secretly selling life

_____

2013) (citing *Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Lab.*, Civ. No. 11-
4017, 2012 WL 327863, at *21 (N.D. Iowa Feb. 1, 2012)). Therefore, because
plaintiffs have remaining claims, the court will not address the issue of
punitive damages here.

settlement policies directly to Fox Financial/Morningstar in such a manner that prevented plaintiffs from receiving compensation that was owed to them. *Id.* at ¶¶ 39-40. This interference not only impaired plaintiffs' current business relations with Fox Financial, but also precluded further business dealings and resulted in various damages to plaintiffs including lost profits. *Id.* at ¶ 36, 41. In sum, plaintiffs have alleged sufficient facts to support their claim for tortious interference with a business relationship.

## CONCLUSION

Following amendment to their complaint, plaintiffs established this court has diversity jurisdiction over this case. With regard to establishing personal jurisdiction over the defendants, plaintiffs made a prima facie showing that the court has specific personal jurisdiction over defendant Palmquist. While there is not sufficient evidence before the court to make a similar determination with respect to the defendant companies, the court will allow plaintiffs jurisdictional discovery to establish whether each defendant company has sufficient contacts with South Dakota. Moreover, the District of South Dakota is an appropriate venue for this action because plaintiffs' claims relate to, and perhaps arise out of, defendant Palmquist's contacts with South Dakota.

Separately, plaintiffs sufficiently pleaded claims for accounting, breach of contract, and tortious interference with a business relationship. But plaintiffs failed to plead with particularity the circumstances surrounding their claim for fraud and deceit. Accordingly, it is

ORDERED that plaintiffs' motion to amend complaint (Docket 21) is granted. Plaintiffs will file their amended complaint by **September 4, 2013**.

IT IS FURTHER ORDERED that defendants' motion to dismiss for lack of subject matter jurisdiction (Docket 17) is denied.

IT IS FURTHER ORDERED that defendants' motion to dismiss for lack of personal jurisdiction (Docket 17) is denied without prejudice. Plaintiffs have 120 days to complete jurisdictional discovery, after which the corporate defendants will have 30 days to move for dismissal for lack of personal jurisdiction.

IT IS FURTHER ORDERED that defendants' motion to dismiss, or in the alternative transfer venue, for improper venue (Docket 17) is denied.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiffs' claims for accounting, breach of contract, and tortious interference with a business relationship (Docket 17) is denied.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiffs' claim for fraud and deceit (Docket 17) is granted, without prejudice.

Dated August 28, 2013.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE